**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

JULIA A. BIEGLER,

     Appellant-Cross-Appellee,    5:18-cv-737 (BKS)

v.

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

     Appellee-Cross-Appellant.

**Appearances:**

*For Appellant-Cross-Appellee:*
James F. Selbach
Selbach Law Offices, P.C.
8809 Daylight Drive
Liverpool, NY 13090

*For Appellee-Cross-Appellant:*
William S. Nolan
Whiteman Osterman & Hanna, LLP
One Commercial Plaza, Suite 1900
Albany, NY 12260

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

Presently before the Court is Appellant Julia A. Biegler's appeal from a June 8, 2018, Order of United States Bankruptcy Judge Margaret Cangilos-Ruiz following a trial held to determine the dischargeability of Appellant's student loans. (Dkt. No. 1). Appellant challenges the bankruptcy court's finding that her Stafford Loans were not discharged in her 1995 Chapter 7 bankruptcy. (Dkt. No. 15). Appellee Educational Credit Management Corporation ("ECMC") cross-appeals, challenging the bankruptcy court's finding that Appellant's Auxiliary Loans to

Assist Students ("Auxiliary Loans") were discharged in her 1995 bankruptcy. (Dkt. No. 16). For the reasons set forth below, the bankruptcy court's decision is affirmed.

## II. BACKGROUND

Appellant filed for Chapter 7 bankruptcy protection on October 10, 1995 and obtained a general discharge. (Dkt. No. 5-75 ¶¶ 4–5).[1] In 2015, Appellant filed a complaint with the Northern District of New York Bankruptcy Court, commencing an adversary proceeding to adjudicate the dischargeability of certain educational loans that had been scheduled in the 1995 bankruptcy. (Dkt. No. 5-19). These loans have since been assigned to ECMC, which contests their dischargeability. (*Id.* ¶ 20; Dkt. No. 5-8, ¶ 8). Appellant sought a declaration of dischargeability under 11 U.S.C. § 523(a)(8)(A) (1995) which, at the time her bankruptcy petition, allowed for the discharge of student loans that had been in repayment for more than seven years, exclusive of any applicable suspensions, at the time of the filing of a bankruptcy petition.

### A. Appellant's Enrollment

Appellant began a doctoral degree program at Syracuse University ("SU") in the fall of 1982. (Dkt. No. 5-30). She maintained full-time or half-time status through summer 1985. (Dkt. No. 5-5, ¶¶ 6–7). Appellant stayed below half-time status for the remainder of her studies, with the exception of the spring 1987 semester. (*Id.* ¶¶ 8–9). Although Appellant carried no credits that semester, SU issued a certification of full-time status. (Dkt. No. 5-30; Dkt. No. 5-5, ¶ 9).

---

[1] As noted by Appellee, there has been "some confusion regarding the designation of documents in the [r]ecord." (Dkt. No. 16, at 9 n.1). In bankruptcy appeals, the appellant bears the burden of filing with the bankruptcy clerk "a designation of items to be included in the record on appeal and a statement of the issues to be presented." Fed. R. Bankr. P. 8009(a)(1)(A). Here, Appellant's submission of the record is scattered, redundant, and—in some instances—incomplete. (*Compare* Dkt. No. 5 (designating items 1–105 to be added to the record), *with* Dkt. Nos. 5-1–5-86 (providing only eighty-six items for the record)). The Court has reviewed all documents actually submitted by both parties for the record on appeal. For consistency, the Court will refer to docket numbers and page numbers provided by the Court's CM/ECF system.

### B. Appellant's Educational Loans

Records submitted by both parties show that Appellant obtained eleven student loans between 1981 and 1985. (Dkt. No. 5-33, at 3–4; Dkt. No. 7-7, at 3; Dkt. No. 7-9, at 3). Specifically, Appellant received eight Stafford Loans and three Auxiliary Loans. (*Id.*; Dkt. No. 16, at 10). The Stafford Loans provided that Appellant would begin repayment nine months after she "[became] less than a half-time student." (Dkt. No. 5-31, at 3). This nine-month deferment operated as a "grace period," during which Appellant did not have to repay her loans. (*Id.* at 9). The Auxiliary Loans, in contrast, did not contain a grace-period provision and state that repayment was deferred "[d]uring any period in which [the borrower was] pursuing a full-time course of study."[2] (*Id.* at 21). On her student loan applications, Appellant indicated that her "anticipated date of program completion" was May 1986. (*Id.* at 23, 26).

### C. Trial Testimony

Bankruptcy Judge Cangilos-Ruiz conducted a trial on March 23, 2018. (Dkt. No. 16, at 62). At trial, Appellant, Ann Corbitt (an assistant registrar at Syracuse University), and Margaret Gonsowski (a senior attorney with the New York State Higher Education Services Corporation ("HESC")) testified.[3] (*Id.* at 63, 112).

Appellant testified that she completed her coursework in August 1985 and carried no credits from that point forward. (*Id.* at 74–75). According to Appellant, she received full-time certification in the spring of 1987 merely "[t]o give credit to my advisor for working with me," and "not . . . for the purposes of deferring a loan." (*Id.* at 77–78). She further testified that she

---

[2] As Bankruptcy Judge Cangilos-Ruiz explained, two of Appellant's Auxiliary Loan agreements are illegible. (*See* Dkt. No. 5-31, at 24–27). However, it is reasonable to infer, as Bankruptcy Judge Cangilos-Ruiz did, that "the terms for those two loans are substantially the same as the April 1985 note, as all three notes were issued by the same institution within a two-month period and no governing laws changed in the interim." (Dkt. No. 5-55, at 4). Neither party has challenged that determination.

[3] HESC is the guarantor of Appellant's student loans. (*See* Dkt. No. 16, at 116).

began making payments on her student loans in May 1986, nine months after completing her coursework. (*Id.* at 79–83). However, Appellant produced no records to verify those payments. (*Id.* at 87).

Gonsowski testified that Appellant's loans became due on March 1, 1988, following a nine-month grace period that began at the conclusion of Appellant's full-time status on May 31, 1987. (*Id.* at 118). Although Appellant first fell below half-time status in May 1986, Gonsowski explained that Appellant "[did not] use up her grace period" at that time because she returned to full-time status in January 1987. (*Id.* at 136). According to Gonsowski, the loans did not mature until Appellant fell below half-time status for a period of nine complete months. (*Id.* at 135–36). This nine-month period, Gonsowski testified, began on May 31, 1987, when Appellant's status fell from full-time to less than half-time, and ended on March 1, 1988, at which point, repayment was to begin. (*Id.* at 144–45). According Gonsowski, HESC relied on information in Appellant's promissory notes and financial aid applications, which the SU financial aid office provided, in determining the loans' March 1, 1988 maturity date. (*Id.* at 131).

As to repayment, Gonsowski testified that Appellant was given a partially retroactive forbearance on her loans on June 9, 1992. (*Id.* at 125). Further, at Appellant's request, HESC reduced Appellant's payments from $361 to $150 per month starting on May 2, 1995. (*Id.* at 127–28).

### D.   The Bankruptcy Court's Decision

Following the trial, Bankruptcy Judge Cangilos-Ruiz issued a Memorandum-Decision and Order finding that at the time she filed for bankruptcy in October 1995, Appellant's: (i) Stafford Loans had been in repayment for 6.8 years, and therefore were not discharged; and (ii) Auxiliary Loans had been in repayment for 8.4 years and therefore were discharged. (Dkt. No. 5-55).

In calculating the number of years the Stafford Loans had been in repayment at the time Appellant filed her bankruptcy petition, the bankruptcy court determined that May 31, 1986, the "date represented by Debtor [in her student loan application] and relied upon by her lenders as the end of Debtor's full-time status," initially triggered the nine-month grace period. (*Id*. at 15). However, Appellant's return to full-time status in January 1, 1987 placed her Stafford Loans back in deferment, and so the nine-month grace period reset and began again on May 31, 1987, when her full-time status ended. (*Id*. at 6). After adding the nine-month grace period the bankruptcy court found that the Stafford Loans entered repayment on February 28, 1988. (*Id.* at 20). This yielded a repayment period of 7.6 years. (*Id*.). From that time period, however, the bankruptcy court deducted .8, to account for the 302 days in suspensions of and reductions in payment. (*Id*. at 17–20). The resulting time for which the Stafford Loans had been in repayment as of the date of the filing of the bankruptcy petition was 6.8 years. (*Id.* at 20). Since the Stafford Loans had not been in repayment for more than seven years (exclusive of any applicable suspensions) at the time of the filing of a petition for bankruptcy, 11 U.S.C. § 523(a)(8)(A) (1995), the bankruptcy court determined that the Stafford Loans were not discharged by the 1995 bankruptcy. (*Id*. at 21).

As to Appellant's Auxiliary Loans, the bankruptcy court found that these loans entered repayment on June 30, 1986—one month after Appellant's full-time status ended. (Dkt. No. 5-55, at 20). In doing so, the bankruptcy court rejected as "erroneous[]," the parties' stipulation that both the Stafford and Auxiliary Loans provided for a nine-month grace period. (*Id.* at 15). The court explained that the terms of the Auxiliary Loans contained no such provision, and the federal ALAS program,[4] which governed the Auxiliary Loans, only provided for deferment

---

[4] *See* 20 U.S.C. § 1077(a)(2)(C) (1981).

5

during full-time study. (*Id.* at 15–16). The court further explained that Appellant's testimony that she began making payments after receiving coupon books in May 1986 was credible and consistent with the finding that repayment on the Auxiliary Loans began on June 30, 1986. (*Id.* at 16). Finally, though noting that the Auxiliary Account History was "incomplete and contradictory," the bankruptcy court found that "it appears that loan-related events occurred before the start of the records [in March 1988]." (*Id.* at 7). Specifically, the bankruptcy court noted that the starting principal balance on the Auxiliary Loans in 1988 was $575.22 less than the amount originally disbursed. (*Id.*). Additionally, the available records showed that payment had been credited to the account before the first entry of record. (*Id.*). Thus, prior to deductions for suspensions (forbearance and payment-reduction periods) the bankruptcy court found that Appellant had spent 9.4 years in repayment on the Auxiliary Loans. (*Id.* at 20).

The bankruptcy court found that the Auxiliary Loans were subject to the same forbearance and payment-reduction periods—302 days—as the Stafford Loans. (*Id.* at 20) Therefore, the court found that Appellant's Auxiliary Loans had been in repayment for 8.4 years when she filed for bankruptcy in October of 1995. (*Id.*) Accordingly, the bankruptcy court held that Appellant's Auxiliary Loans were discharged at that time. (*Id.* at 21).

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Stoltz*, 315 F.3d 80, 87 (2d Cir. 2002) (citing *McCord v. Agard*, 252 F.3d 113, 116 (2d Cir. 2001)). Mixed questions of law and fact are reviewed *de novo*. *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). "[A] district court 'may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision[]

6

below.'" *Rozier v. Rescap Borrower Claims Trust*, No. 15-cv-3248, 2016 WL 796860, at *7, 2016 U.S. Dist. LEXIS 21204, at *19 (S.D.N.Y. Feb. 22, 2016) (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010) (second and third alterations in *Rozier*)).

IV. **DISCUSSION**

    A. **Appellant's Appeal**

Appellant presents three issues to the court that essentially boil down to one argument—that the bankruptcy court erred when it determined that Appellant's Stafford Loans entered repayment on February 28, 1988. (Dkt. No. 15, at 5–6). Appellant contends that the seven-year repayment period should have commenced in May 1986, nine months after she ceased being a full-time student in August 1985. (*Id.* at 5). As discussed, the bankruptcy court found it proper to "treat the May 31, 1986 date represented by [Appellant] and relied upon by her lenders as the end of [her] full-time status." (Dkt. No. 5-55, at 15). Because Appellant regained status as a full-time student within nine months, and then was entitled to another nine-month grace period after her full-time status ended again, the bankruptcy court found that her Stafford Loans entered repayment in February 1988. (*Id*. at 14, 20).

Where a student-loan borrower indicates an expected graduation date and receives an in-school deferment pursuant to that information, courts have found it proper to credit the lender's reliance on the borrower's expected graduation date. *See In re Huber*, 169 B.R. 82, 85 (Bankr. W.D.N.Y. 1994); *In re Kaufman*, 9 B.R. 755, 758 (Bankr. E.D. Pa. 1981). Notably, in these cases (as here) the borrower failed to notify the lender of a change in his or her enrollment status. *Id*. Thus, as the bankruptcy court explained, "[n]ot only would it run afoul of equitable principles to discard evidence of the Debtor's own misrepresentation, but it would be 'a virtual impossibility for banks engaged in making student loans for state agency guarantors to police the many thousands of borrowers to determine which students are still in school and which have

withdrawn before graduation.'" (Dkt. No. 5-55, at 14–15 (quoting *New York State Higher Educ. Servs. Corp. v. Lucianna*, 666 A.2d 173, 175 (N.J. Super. Ct. App. Div. 1995))).

Here, the record shows that Appellant reported an expected graduation date of May 1986 when she applied for financial aid. (Dkt. No. 5-31, at 23, 26). The testimony presented at trial showed that HESC relied on those financial aid applications to determine Appellant's eligibility for student loans and the duration of her in-school deferment. (Dkt. No. 16, at 131, 185–86).[5] The bankruptcy court reasonably concluded that "[Appellant] 'cannot now claim that [s]he may benefit twice—once from the deferment and a second time by discharge of the debts for age.'" (Dkt. No. 5-55, at 14 (quoting *Huber*, 169 B.R. at 85)).

Appellant contends that the bankruptcy court's decision is incorrect because there was "no evidence as to . . . the Appellant's state of mind at the time [of signing the notes that indicated her expected graduation date was May 1986]" and "deceptive intent" is required for the bankruptcy court to apply equitable principles. (Dkt. No. 15, at 6–8). According to Appellant "there could be innocuous reasons" for her misrepresentations regarding her expected graduation date, and so it was incorrect for the bankruptcy court to believe "that the Appellant signed the notes in order to delay repayment by tricking the lender into believing that she was still a full-time student." (*Id.* at 7).

But nothing in the bankruptcy court's opinion suggests that it rests on finding that Appellant intentionally and fraudulently misled her lender into believing she was still a full-time student in order to receive additional loans and deferments. Even if Appellant's representations

---

[5] Appellant asserted that she was not in school full time after the summer of 1985; that the loans entered repayment, after a nine-month grace period, in May 1986; and that she began making payments on the loans in May of 1986. (Dkt. No. 16, at 83). The bankruptcy court credited her testimony that she began making payments, but found that these payments were on the Auxiliary Loans, not the Stafford Loans. (Dkt. No. 55-5, at 16-17). Appellant has not challenged that finding and, in any event, the Court does not find that it is clearly erroneous.

8

about her expected graduation date were made for entirely innocuous reasons, this does not change the fact that Appellant benefitted from her representations by receiving additional loans and deferments. It would thus be inequitable to allow her to also receive the benefit of an earlier repayment date. Appellant cites no relevant authority for the proposition that her state of mind is relevant to this issue. As the court aptly stated in *Huber*, "a period of deferment is (by definition) a period during which the lender may not seek collection, and it would therefore be an odd and inequitable result if a party who forbears collection activity at the borrower's request were to be held time-barred from collection as a consequence." 169 B.R. at 86.

Plaintiff has failed to identify any error in the bankruptcy court's determination that Appellant's Stafford Loans entered repayment on February 28, 1988 and were not dischargeable in her 1995 bankruptcy case.

    **B.**    **Appellee's Cross-Appeal**

Appellee argues the bankruptcy court erred in two ways when it determined that Appellant's Auxiliary Loans were discharged because they were in repayment for more than seven years prior to filing for bankruptcy. (Dkt. No. 16). First, it contends that the bankruptcy court erred in disregarding the parties' stipulation that the Auxiliary Loans were subject to the same grace period as her Stafford Loans, rendering its calculation as to the date the Auxiliary Loans went into repayment incorrect. (*Id.* at 19–23). Second, it argues that the bankruptcy court lacked adequate evidence to conclude that Appellant's Auxiliary Loans entered repayment in 1986. (*Id.* at 23–26).

1. **Stipulation**

Appellee argues that the bankruptcy court erred by rejecting the parties' stipulation that all of Appellant's student loans were subject to a nine-month grace period.[6] "Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) (quoting *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980)). When the parties have agreed to a set of facts, the court is bound by those facts and is not "free to pick and choose at will." *Id.* (quoting *Stanley Works v. FTC*, 469 F.2d 498, 506 (2d Cir. 1972)).

However, there are "three well-recognized exceptions to this general rule." *In re Roland*, 294 B.R. 244, 250 (Bankr. S.D.N.Y. 2003). Specifically, the court is not bound by stipulations if: (1) the parties created a case by stipulating to facts that do not exist; (2) it would be manifestly unjust or "the evidence contrary to the stipulation is substantial;" or (3) if the stipulation regards a question of law. *Id.*

Here the bankruptcy court disregarded the stipulation because it "erroneously treated the programs as subject to the same temporal payment terms." (Dkt. No. 5-55, at 15). The Court finds that the third exception applies to the bankruptcy court's determination that the Auxiliary Loans were not subject to a nine-month grace period. "A court . . . is not bound to accept stipulations regarding questions of law." *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990). As applicable here, "[t]he interpretation of a contract or written instrument presents a question of law." *Roland*, 294 B.R. at 250 (holding that a stipulation regarding the meaning of a postseparation agreement was not binding on the bankruptcy court); *see also Marden v. Int'l*

---

[6] The stipulation reads in full: "The Student Loans contain a nine-month grace period during which time no payments on the Student Loans were required." (Dkt. No. 16, at 60). "Student Loans" were defined as the eleven loans under the Federal Family Education Loan Program that Appellant applied for and received, including both Stafford Loans and Auxiliary Loans. (Dkt. No. 16, at 58–59).

*Ass'n of Machinists & Aerospace Workers*, 576 F.2d 576, 580 (5th Cir. 1978); *Connelly's Estate v. United States*, 398 F. Supp. 815, 817 (D.N.J. 1975), *aff'd*, 551 F.2d 545 (3d Cir. 1977) (holding that the court is not bound by factual stipulations regarding the interpretation of an annuity contract when they contradict its plain language).

*Marden* is instructive. 576 F.2d at 580. There, the Fifth Circuit upheld the district court's disregard of the parties' stipulation that a provision required union membership because "the district judge was free to pursue his own examinations of the contents of the agreement unencumbered by stipulations of counsel." *Id*. Even though the language of the agreement expressly required membership, the district court found that the language of the contract "tracked the applicable statute which has been judicially construed to authorize 'membership' only in terms of fees incidental to membership." *Id*. It is therefore in the court's power to makes its own judgments as to the terms of an agreement, and this judgment can be informed both by the explicit terms of the agreement and the law that informs them.

In this case, the parties stipulated that all of Appellant's student loans contained a nine-month grace period. (Dkt. No. 16, at 57). This stipulation is consistent with the terms of Appellant's Stafford Loan agreements, which provide that she will "begin to repay this loan on the date any one of these events occurs: (1) the end of the ninth month following the month in which [she] cease[s] to be matriculated, withdraw[s] from, or become[s] less than a half-time student." (Dkt. No. 5-31, at 3).

The stipulation is inconsistent, however, with the law that governed Appellant's Auxiliary Loans and the terms of her Auxiliary Loan agreements. *See* Dkt. No 5-55, at 15–16; 20 U.S.C. 1077(a)(2)(C) (1981); 59 Fed. Reg. 33334-01. Appellee has not demonstrated error in the bankruptcy court's analysis of the statutory and regulatory provisions indicating that the

Auxiliary loans were, in fact, subject to different payments terms. Loans that were backed by the federal government at that time were required to be deferred if the borrower was a student, but a grace period was not required. 20 U.S.C. § 1077(a)(2)(C) (1981). As the bankruptcy court noted, "[c]hanges to the law which delayed repayment of [auxiliary loans] until the grace period ran on any existing Stafford Loans did not occur until 1992." (Dkt No. 5-55, at 15). In any event, the terms of Auxiliary loans were consistent with this law. There was no provision requiring a nine-month deferment in the Auxiliary Loans. (Dkt. 5-31, at 20–21). Rather, the loan is only deferred as long as she remained a full-time student. (*Id*.).

Given that the loan agreements were in the record, the bankruptcy court was not bound by the parties' stipulation that both the Stafford Loans and Auxiliary Loans were subject to nine-month grace periods. The interpretation of a written agreement is a question of law, and so a court is not bound by a stipulation as to its meaning. *See Roland*, 294 B.R. at 250. It was within the court's power to disregard the stipulation and engage in an independent assessment as to the meaning of the Appellant's student loan agreements, taking into account the law that governed the agreement at the time. As such, the Court finds that the bankruptcy court did not err by disregarding the parties' stipulation that the Auxiliary Loans contained a nine-month grace period.

### 2. Repayment Date

The Court next analyzes Appellee's argument that the bankruptcy court committed clear error in determining Appellant's Auxiliary Loans entered repayment on June 30, 1986. (Dkt. No. 16, at 23–26). Appellee argues that "[n]otwithstanding the parties' stipulation," the evidence does not support Appellant's claim "that she began making payments on her Loans before they entered repayment in March 1988." (*Id.* at 24). In support, Appellee points to certain evidence

that corroborates this account, including the Auxiliary Account History, that suggests her account entered repayment status, at the earliest, on February 28, 1988. (*Id*.).

The bankruptcy court's finding that that Auxiliary Loans entered repayment on June 30, 1986 was, however, not clearly erroneous. (Dkt. No. 5-55, at 15–17). First, the terms of Appellant's April 1985 loan contained no provision referencing a grace period. (Dkt. No. 5-31, at 21). Second, the bankruptcy court credited Appellant's testimony that she made payments in this time period. (Dkt. No. 5-55, at 14). Third, and most notably, the Auxiliary Account History indicated that payments had been made prior to 1988. (*Id*. at 7). As the bankruptcy court noted, the account history is "incomplete and contradictory." (*Id*.). The first recorded action is an account statement sent to Appellant on March 31, 1988. Yet there was a payment credited to an earlier date (March 11, 1988), and the account balance listed was $575.22 less than the amount originally disbursed. Notably, "[e]arly in the repayment period of an interest-bearing loan, payments are directed towards interest, rather than principal. Therefore, payments totaling substantially more than $575.22 would have been credited to the account to in that decrease in principal." (*Id.* at 7). Taken together, these facts amply support the bankruptcy court's determination that the Auxiliary Loans were in repayment prior to 1988.

Appellee cites to evidence in the record that suggests that Appellant was granted a 32-month student deferment from September 1, 1985 until May 1, 1988. (Dkt. No. 5-55, at 7). As noted above, the first recorded action on the Auxiliary Loan account occurred in March 1988. Additionally, the loan servicer retroactively changed Appellant's separation date from May 1988 to August 1985, and simultaneously granted a student deferment for that period. (*Id*.). The "reason for this retroactive change is unclear from ACS records, and it was not addressed in testimony." (*Id.* at 17). The bankruptcy court concluded that "even if there was a deferment, it is

more likely than not that the deferment did not cover the entirety of the period." (*Id.* at 17). This was consistent with, and supported by, the evidence of repayments made prior to 1988.

Notably, Appellee has not offered any explanation for why Appellant's starting principal balance on her Auxiliary Loans in 1988 was less than the total she was loaned. Rather, Appellee asks the Court to ignore these "factual discrepancies" in light of the parties' stipulation that the loans were subject to a grace period. (Dkt. No. 16, at 24). The Court declines to do so. The bankruptcy court's factual finding that Appellant's Auxiliary Loans entered repayment in 1986 accords with the evidence and falls far short of clear error.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the bankruptcy court's order is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: September 24, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge